# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILILNOIS
# EASTERN DIVISION

| | |
|---|---|
| LAWRENCE SMIZER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10 C 4304 |
| ) | |
| COMMUNITY MENNONITE EARLY ) | Judge John Z. Lee |
| LEARNING CENTER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lawrence Smizer ("Plaintiff"), a former preschool teacher at Defendant Community Mennonite Early Learning Center ("CMELC"), alleges he was terminated from his position due to gender discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 1981. After the conclusion of discovery, CMELC moved for summary judgment on Plaintiff's Title VII claim.[1] As set forth below, CMELC's motion is granted.

## FACTS

The following facts are undisputed.[2] Defendant CMELC is a non-profit educational institution located in Markham, Illinois, which provides preschool educational opportunities for

---

[1] Plaintiff's complaint also purports to state a claim of "Defamation" (presumably under Illinois state law). CMELC's motion for summary judgment does not address it. Therefore, the Court construes CMELC's motion as only seeking summary judgment as to Plaintiff's Title VII claim.

[2] Plaintiff is proceeding in this matter *pro se*. The Court has special protections in place for *pro se* plaintiffs defending their claims against summary judgment. *See* Local Rule 56.2. For example, defendants moving for summary judgment against a *pro se* plaintiff are required to "serve and file as a separate document, together with the papers in support of the motion, a 'Notice to Pro Se Litigant Opposing Motion for Summary Judgment. . . .'" *Id.* CMELC initially failed to comply with Local Rule 56.2, and the Court authorized it to remedy this defect by (a) granting Plaintiff additional time to file an amended opposition to the motion for summary judgment and (b) requiring CMELC to provide the requisite Notice as an exhibit to its reply brief. (Doc. 56.) CMELC satisfied the Order (Doc. 62) and thus is in compliance with Local Rule 56.2 for the purposes of this motion.

young children. (Def.'s Local Rule 56.1(a)(3) Stmt. ("Def.'s LR 56.1(a)(3)") ¶ 5.) Plaintiff was employed at CMELC as a teacher's assistant from 1993 until April 2010. (*Id.* ¶ 6.) Plaintiff's mother, Jackie Smizer, is the executive director at CMELC and has held that position since 1999. (*Id.* ¶ 9.) Plaintiff's grandmother, Rosemary Wooley, volunteers at CMELC. (*Id.* ¶ 10.)

While Plaintiff was still employed at CMELC, Plaintiff and his mother and grandmother evidently had a difference of opinion with respect to attempts by Plaintiff's sister to regain custody of her teenaged son. (*Id.* ¶¶ 11-12.[3]) In April 2010, Jackie Smizer received an email from that teenaged grandson forwarding the text of a Facebook post from an individual identified as "Lawrence Dontyoujudgeme Smizer." (*Id.* ¶ 12.) The text of the post read as follows:

> To all my family that fought my sister tooth and nail over some BULLSHIT (And you know who you are) FUCK YOU BITCHES!!!! HE IS GOING HOME WHERE HE BELONGS!!!!!
> HAHAHAHAHAHAHAHAHAHAHAHAHAHAHAAHAHHAH AHHAAH

(Def.'s Ex. C, Attach.) Jackie Smizer believed that the post was directed at her and Wooley. (*Id.* ¶ 14.) At least two other CMELC employees, who were "Facebook friends" with Plaintiff, reported viewing the posting. (*Id.* ¶¶ 18-19.) Jackie Smizer informed CMELC Board Chairman Michael Devine of the post, who then reviewed it himself. (*Id.* ¶ 15.) Devine then met with Plaintiff and terminated his employment, referencing the offensive posting as a reason for the dismissal. (*Id.* ¶¶ 20-21.[4])

---

[3] While Smizer disputes the propositions in ¶¶ 11-12, 14, and 18-19, he fails to "cite specific evidentiary materials justifying the denial," as required by Local Rule 56.1. *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Therefore, these paragraphs are considered to be undisputed.

[4] Smizer disputes these propositions, but the evidentiary materials he relies upon fail to support his denials. For example, Smizer disputes that Devine referred to the Facebook posting at the time of the termination and cites to certain pages from the transcript of a hearing before a referee from the Illinois Department of Employment Security Appeals Division. However, at that hearing, Devine did not testify that he failed to reference the post, only that he did not address certain attendance issues with Smizer at

2

After Plaintiff's termination, CMELC submitted a memorandum to its unemployment claims representative outlining the reasons for dismissal. (Pl.'s Local Rule 56.1(b)(3) Stmt. ("Pl.'s LR 56.1(b)(3)"), Ex. A thereto.) The first reason given was the Facebook posting (erroneously referred to as a "MYSPACE entry") and other conduct related to the family dispute. (*Id.*) The memorandum also stated that CMELC believed that (a) Plaintiff was viewing pornography on CMELC computers; (b) Plaintiff kept pornographic magazines in a closet in his classroom; (c) Plaintiff failed to keep his classroom in a clean and orderly condition; and (d) there were discrepancies in his time sheets. (*Id.*)

## DISCUSSION

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmoving party must then set forth specific facts demonstrating that there are disputed material facts that must be decided at trial. *Id.* at 321-22.

Here, Plaintiff alleges that CMELC engaged in reverse gender discrimination in violation of Title VII of the Civil Rights Act. Under Title VII, it is unlawful for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). A Title VII gender discrimination claim can survive summary judgment if the plaintiff presents either (1) direct or circumstantial evidence of discrimination (the "direct method") or (2) indirect

---

the time of his termination. (*See* Pl.'s Resp. Def.'s LR 56.1(a)(3), Ex. H, at 12, lines 7-9.) These factual statements are thus considered to be undisputed.

evidence that establishes a *prima facie* case and satisfies the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-02 (1973) (the "indirect method"). *See Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 591-92 (7th Cir. 2008). Plaintiff avers that he is proceeding under the direct method (Resp. at 14), but his response brief can be fairly read to argue his case under the indirect method as well. Therefore, the Court addresses Plaintiff's Title VII claim under both approaches.

### A. Direct Method

Using the direct method, Plaintiff must establish "either an acknowledgment of discriminatory intent or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007). "Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Essentially, direct evidence "requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Id.* (internal citations omitted).

In the absence of direct evidence, circumstantial evidence is deemed sufficient to satisfy the direct method of proof where it forms a "convincing mosaic" that "allows a jury to infer intentional discrimination by the decisionmaker," and "point[s] directly to a discriminatory reason for the employer's action." *Id.* (internal citations omitted); *cf. Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J. concurring) (noting that courts should collapse direct and indirect approaches in Title VII cases). This hurdle "can be a high threshold, particularly in a reverse discrimination case." *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 676-77 (7th Cir. 2012).

As Judge Posner explains, there are three ways in which a plaintiff may provide circumstantial evidence of intentional discrimination sufficient to prevail under the direct method. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). The first is by providing evidence of suspicious timing, statements, and/or behavior toward other (male) employees "from which an inference of discriminatory intent might be drawn." *Id.* The second is by providing evidence that female similarly-situated employees "received systematically better treatment." *Id.* The third requires a plaintiff to present evidence that he was replaced by another employee who is not part of the same protected class under a mere pretext.

Plaintiff makes two arguments for prevailing under the direct method.[5] First, Plaintiff states that there is sufficient circumstantial evidence of discrimination because at the time of his termination, there were only two full-time male employees, and only one (Plaintiff) was a classroom staff member. (Resp. at 2.) Second, Plaintiff asserts that there are four similarly-situated female employees who were treated materially better than he. (Resp. at 9.) CMELC counters that Plaintiff has not presented any direct evidence of discrimination, and the Court agrees. Plaintiff's arguments are addressed below.

### 1. Lack of Male Employees at CMELC

First, Plaintiff argues that there is sufficient evidence of discrimination because at the time of his termination, there were only two full-time male employees, and only one (Plaintiff) was a classroom staff member. (Resp. at 2.) But as CMELC points out, Plaintiff cannot identify any comments made by CMELC directed at either his gender or men generally when he was fired. *Rhodes*, 359 F.3d at 504. Plaintiff also presents no evidence that other males had applied for classroom staff positions at CMELC but were turned down. Nor does he present any

---

[5] Plaintiff provides no argument with respect to the third approach outlined under *Troupe*. (Resp. at 14.)

5

evidence to support his conclusory assertions that the "female dominated field" he worked in was "female dominated" due to discriminatory animus. Plaintiff's first argument thus fails to support his claim under the direct method.

### 2. Similarly-Situated Employees

Plaintiff next attempts to identify other similarly-situated female employees who received better treatment than he. *See Troupe*, 20 F.3d at 736. To prevail in this manner, Plaintiff must demonstrate that "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Weber v. Univs. Research Ass'n, Inc.*, 621 F.3d 589, 594 (7th Cir. 2010) (internal citations omitted). In order to satisfy the "same supervisor" requirement, plaintiffs must show, at a minimum, that a comparator was treated more favorably by the same decision-maker who took an adverse employment action against the plaintiff. *Ellis v. United Parcel Service*, 523 F.3d 823, 826 (7th Cir. 2008). For the "same standards of conduct" element, courts examine "whether the employer subjected them to different employment policies." *Coleman*, 667 F.3d at 848-49. Finally, a plaintiff must show that the alleged comparator "engaged in comparable rule or policy violations" without differentiating or mitigating circumstances to distinguish their conduct or the employer's treatment of them. *Id.* (internal citations omitted); *Weber*, 621 F.3d at 594. The Seventh Circuit has explained that "comparable seriousness" exists where the proposed comparator "engaged in similar – not identical – conduct to qualify as similarly situated." *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis*, 510 F.3d 681, 689 (7th Cir. 2007).

Plaintiff contends that there were three full-time female employees and one female support staff member who were similarly-situated and treated more favorably than he. (Resp. at

9.) However, the evidence that Plaintiff offers simply does not support this contention. Plaintiff identifies four CMELC employees, Melanie Duckworth, LaQuisha Bijou, Erin Devers and Tara Robinson, as potential comparators. (Resp. at 9.) Plaintiff claims that he used the following criteria to identify these four women:

- Their level of education as compared to Plaintiff;
- Their level of experience in the field of child care, particularly at CMELC;
- Their similar age;
- Their race;
- Their family affiliation with a member of CMELC senior staff;
- Their positions at CMELC; and
- Their active Facebook accounts.

(*Id.*)

According to Plaintiff, Melanie Duckworth and LaQuisha Bijou satisfy seven out of the seven criteria while Erin Devers and Tara Robinson satisfy six of the seven. (*Id.*) However, Plaintiff wholly fails to put forth any evidence as to how these criteria apply to these women. For example, nowhere in his response brief or in his Rule 56.1(b)(3) statement of additional material facts does Plaintiff describe their respective levels of education; their job experience; their family affiliation with CMELC (if any); their positions, titles and job responsibilities at CMELC; or their job performance history while employed at CMELC.[6] Instead, Plaintiff's sole

---

[6] Plaintiff incorrectly titles his Local Rule 56.1(b)(3) Statement as filed pursuant to Local Rule 56.1(a)(3), but the Court will construe it as filed under the appropriate section of the Local Rule. CMELC also asserts that Plaintiff exceeds the limitation of 40 additional material facts allowed pursuant to Local Rule 56.1(b)(3)(C), and that because he did not seek leave of Court to do so, the additional facts should be stricken. (Reply at 6.) Although the Court normally would agree, it will allow Plaintiff to exceed the limitation given his *pro se* status.

7

basis of comparison appears to be that these four women purportedly violated certain CMELC rules and were not terminated, while he was. We will address these contentions in turn.

### a. Melanie Duckworth and LaQuisha Bijou

In his statement of additional facts, Plaintiff alleges that he was "terminated for discrepancies in his time record." (Pl.'s 56.1(b)(3)(C) ¶ 75.) He also states that time records for Melanie Duckworth and LaQuisha Bijou "show inconsistencies similar to the plaintiff's time records." (*Id.* ¶¶ 78-79.) In support thereof, he provides copies of time sheet records for Duckworth and Bijou.[7] The foregoing is the sum total of information provided in the materials submitted by Plaintiff regarding this issue. However, in order for Plaintiff to establish that Duckworth or Bijou engaged in conduct of comparable seriousness sufficient to establish them as similarly-situated employees, he must show that they "engaged in comparable rule or policy violations" without differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Coleman*, 667 F.3d at 850 (internal citations omitted); *Weber*, 621 F.3d at 594. The raw data from the time records, without more, is insufficient for Plaintiff to meet this burden. Plaintiff does not present any evidence as to the origin of the data, or as to whether CMELC was even aware of the "discrepancies."[8] Accordingly, Plaintiff has not established Duckworth and Bijou as similarly-situated comparators.

---

[7] Based upon this evidence, Plaintiff concludes that Duckworth and Bijou were "similarly situated to the plaintiff in all material respects," and he cites to unspecified paragraphs in his affidavit as support for these propositions. (*Id.* ¶¶ 85, 86.) However, a review of Plaintiff's affidavit does not reveal any support for these conclusory statements.

[8] On reply, CMELC supplies an affidavit from Jackie Smizer that explains that the time sheet "discrepancies" for Plaintiff were due to his failure to clock in and out as required. (2d J. Smizer Aff. ¶ 10.) By contrast, she states, no discrepancies existed as to Bijou's time records; any gaps in her time sheets are simply due to the fact that she only worked part time during part of her tenure at CMELC. (*Id.* ¶ 11.) As for Duckworth, Jackie Smizer avers that there were no discrepancies in her time records and she has never been subject to corrective action. (*Id.* ¶¶ 12, 15.)

### b. Tara Robinson

As to the third potential comparator, Tara Robinson, Plaintiff testified that she had been arrested for marijuana possession (off of CMELC property) but was not terminated from her employment at CMELC. (Smizer Dep. 61.) Plaintiff testified that "eventually" the CMELC administration knew she had been arrested, but Plaintiff did not know whether she had been convicted. (*Id.* 61-62.)

To blunt this testimony, CMELC included a statement in its Local Rule 56.1(a)(3) filing that "CMELC management had no knowledge of an arrest of Tara Robinson in 1999." (Def.'s LR 56.1(a)(3) ¶ 50.) Plaintiff disputes this assertion in his Local Rule 56.1(b)(3) filing, stating that, on the contrary, Robinson's arrest "prompted CMELC to begin regular drug testing for its employees." (Pl.'s LR 56.1(b)(3) ¶ 50.) In support, Plaintiff cites to his own first affidavit, where he states his belief that: as a general matter, CMELC is notified if a staff member is arrested; Robinson's arrest was a matter of public record; and it prompted CMELC to begin a drug testing program for all employees, which was not in place prior to 1999. (Ex. T, 1st Smizer Aff. ¶¶ 58-61.) Plaintiff's affidavit, however, cites to no evidence to support these bald contentions, nor does he explain the basis for his knowledge of the facts asserted therein. For her part, Jackie Smizer states that she had no knowledge of Robinson's arrest. (1st J. Smizer Aff. ¶ 31.) She also states that CMELC did initiate random drug testing, but it did so after firing another part time employee, not Robinson, for "admitted drug use" while "on the job." (2d J. Smizer Aff. ¶ 6.)

Again, Plaintiff must establish that Robinson "engaged in comparable rule or policy violations" and that there were no facts to distinguish her conduct from his. *Coleman.*, 667 F.3d at 850 (internal citations omitted); *Weber*, 621 F.3d at 594. The Court finds that several factors

distinguish Robinson from Plaintiff. First, there is no evidence in the record that CMELC was even aware of Robinson's arrest, that it actually occurred, or that CMELC failed to terminate her despite this knowledge. But even if the foregoing were true, Robinson's purportedly improper conduct neither was directed at nor involved any CMELC coworkers in contrast to Plaintiff's conduct. Nor is there any evidence that CMELC believed that Robinson had committed other significant infractions like Plaintiff. Thus, Robinson also is not an appropriate comparator.

      **c.**      **Erin Devers**

As for the final proposed comparator, Erin Devers, Plaintiff has not tendered any evidence at all establishing her as a comparator. There is no mention of Erin Devers in either of Plaintiff's affidavits, in his Local Rule 56.1(b)(3) Statement or his response to CMELC's Local Rule 56.1(a)(3) Statement. Plaintiff simply fails to offer any evidence that would qualify Devers as a similarly-situated employee.

In sum, although Plaintiff argues that these four women were similarly situated to him, Plaintiff fails to present any evidence as to their job titles and responsibilities or their performance histories at CMELC. Plaintiff likewise fails to establish that these four women committed any infractions of which CMELC was aware and, if so, whether they were reprimanded or punished as a result. Because Plaintiff has failed to identify any employees who were "directly comparable in all material respects," *Sartor v. Spherion Corp.*, 388 F.3d 275, 279 (7th Cir. 2004), he has not presented sufficient circumstantial evidence to prevail under the direct method.

      **2.**      **Pretext**

Although the lack of a valid comparator wholly dooms Plaintiff's claim under the direct method, Plaintiff's argument with respect to pretext also fails. Plaintiff, citing *Chaney v.*

*Plainfield Healthcare Center*, 612 F.3d 908 (7th Cir. 2010), contends that CMELC advanced changing justifications for his termination, which provides evidence of pretext sufficient to overcome summary judgment under the direct method. It is true that CMELC later suggested that there were other grounds for Plaintiff's termination in addition to the Facebook posting. However, Plaintiff's argument misreads *Chaney*. There, the Seventh Circuit explained that "evidence of pretext, by itself, may not always be enough to defeat summary judgment under the direct method." 612 F.3d at 915. However, there, given the evidence of pretext *coupled with* "other circumstantial evidence of more favorable treatment of a similarly situated co-worker suggesting that race figured into [the defendant's] decision to fire [plaintiff]," the Court found a "triable issue" of material fact sufficient to defeat summary judgment. *Id.* at 915-16 (finding that similarly-situated co-worker had received more favorable treatment). Thus, *Chaney*, as well as the case it relies upon, *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 723-24 (7th Cir. 2005), hold that it is not the existence of shifting justifications alone, but evidence of shifting justifications combined with other circumstantial evidence of discrimination that may defeat summary judgment. Here, additional circumstantial evidence is lacking.

Moreover, in order for the explanations for termination to be characterized as "shifting," they must be either contradictory or inconsistent with the original reasons given, rather than merely being additional reasons for termination. As Judge Korcoras explained in *Jefchak v. Schweppe & Sons, Inc.*, No. 06 C 5681, 2007 U.S. Dist. LEXIS 71918, at *23 (N.D. Ill. Sept. 27, 2007), citing *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 579 (7th Cir. 2003), an additional reason for termination raised after an EEOC proceeding, "if not inconsistent with prior claims, is considered an additional explanation, rather than a 'shifting or inconsistent' explanation, when offered at the time of the lawsuit." Similarly, here, CMELC may have subsequently bolstered its

record for firing Plaintiff with more detail about prior infractions, but it has never backed away from its position that the Facebook posting was the primary basis for termination. These additional reasons may demonstrate "an aggressive defense of its actions, perhaps leading it to occasionally over-defend itself," *see Schuster*, 327 F.3d at 579, but they do not create "an inference of mendacity." *Id.* at 577.

Finally, Plaintiff disputes that: (a) he posted the offending message to Facebook; (b) he ever viewed pornography on CMELC computers; (c) he failed to properly maintain his classroom; and/or (d) he misreported his time entries. However, so long as CMELC honestly believed the reasons it gave for the termination, Plaintiff cannot establish pretext, even if those reasons were wrong, cruel, or even irrational. *See Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006) ("the question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason *was* his reason: not a good reason, but the true reason.") (emphasis in original); *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (noting that in an employment discrimination cases "we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what "*motivated* the employer.") (internal citations omitted). Here, Jackie Smizer was forwarded a copy of the posting from Plaintiff's Facebook account, and numerous CMELC staffers viewed the email due to their status as "Facebook friends" with Plaintiff. (Def.'s LR 56.1(a)(3) ¶¶ 12, 14, 18-19.) It is undisputed that CMELC viewed the posting as being (a) authored by Plaintiff, (b) insubordinate to Jackie Smizer, and (c) a valid basis for its termination of Plaintiff. Plaintiff's contention of pretext therefore fails.

Given the foregoing, this Court finds that Plaintiff cannot survive summary judgment using the direct method of proof.

**B.     Indirect Method**

Plaintiff still may survive summary judgment if he can establish a genuine issue of material fact under the indirect method of proof. In order to prevail using the indirect method, Plaintiff must use the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-02 (1973). *See McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). Under *McDonnell Douglas*, Plaintiff must establish a *prima facie* case of discriminatory termination through a showing that: (1) he is a member of a protected class; (2) he was performing well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside his protected class were treated more favorably. *Id.* All four prongs must be satisfied for a plaintiff to prevail. *Id*.

Additionally, where a male plaintiff pursues reverse discrimination claims, in lieu of the first prong, he must show that there are "background circumstances" or "something fishy" about the relevant facts suggesting that anti-majority discrimination has occurred. *See Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 455-57 (7th Cir. 1999).

Once a plaintiff makes this *prima facie* showing by meeting all four prongs of the test, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination. *See id.* at 454. If a defendant articulates such a reason, the burden of production shifts back to the plaintiff to show that the stated reason is pretextual. *See id.* In this context, a pretext is defined as "a lie, specifically a phony reason for some action." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999).

Plaintiff is unable to establish a *prima facie* case of reverse discrimination because he is unable to satisfy the fourth prong of the test: that similarly-situated female employees who were treated materially differently than him. There is no evidence in the record to establish that any of the four women identified by Plaintiff —Bijou, Duckworth, Robinson, and Devers—were employed at the same level as Plaintiff, committed or were accused of committing the same or similar infractions as he was, and were treated materially differently as a result. *See discussion supra.* Because the fourth prong of the indirect method is not satisfied, Plaintiff's claim must fail.[9]

The Court therefore holds that summary judgment is appropriate as to Plaintiff's Title VII claim and will enter judgment for Defendant as to this claim.

## CONCLUSION

As set forth above, the Court grants Defendant's motion for summary judgment [46] on Plaintiff's Title VII claim. As no viable federal claims remain, the Court relinquishes jurisdiction over Plaintiff's supplemental state claim for defamation. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("The general rule is that once all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolve them on the merits."). That claim is dismissed without prejudice. Civil case terminated.

---

[9] Even if Plaintiff were able to satisfy the four prongs of the indirect test, he still would not be able to demonstrate pretext as also required under the indirect method, because he cannot establish that CMELC's stated reason for the termination was pretext or that its justifications were shifting. *See discussion supra*.

**SO ORDERED**          **ENTER:**    3/19/13

_____
**JOHN Z. LEE**
**U.S. District Judge**